**SHIELDS v. DUNLAP.**

No. 2386.

Court of Civil Appeals of Texas. Eastland.

July 9, 1943.

Chas. Nordyke, of Stephenville, for appellant.

C. O. McMillan, of Stephenville, for appellee.

LESLIE, Chief Justice.

Ernest Dunlap sued Oscar N. Shields to recover $400 deposited by the latter as so-called forfeit money in event the latter failed or refused to comply with his obligations under a written contract whereby Dunlap agreed to convey certain lands to Shields for a consideration of $5,000. The trial was before the court and jury, and upon answers of the latter to special issues a judgment was entered for the plaintiff for amount in suit.

The plaintiff's suit is based upon the terms of the contract, made part of his petition, and he charges the defendant with having breached the same in that he refused to accept the conveyance and pay the consideration promised. Plaintiff alleged that he cured all objections to the title and tendered same, by proper deed, to the defendant within a reasonable time after the date of the contract, that the defendant's failure to accept such conveyance worked a forfeiture of the $400 as liquidated damages contemplated by the parties in the event of such breach under the circumstances attending the transaction.

Shields entered a general denial and alleged the contract to be indefinite, uncertain, and incapable of performance. He further alleged the contract bound the parties to performance "within 15 days" from its date (February 9, 1942) and that the plaintiff failed to perform his obligations under the contract within the time required of him, and that he, the defendant, was at all times ready, able, and willing to carry out the contract during said period. The defendant further alleges that plaintiff failed to furnish him within said 15 days an abstract showing a good and merchantable title to the land. That after plaintiff failed and refused to so perform his part of the contract, he notified plaintiff the deal was off.

The plaintiff Dunlap denied the contract was to be performed within said 15 days or that such provision of the contract was of the essence of the same. Plaintiff also alleged that if such was the meaning of the contract, then defendant waived such compliance and that he, plaintiff, cured the title within a reasonable time after its date and tendered it with sufficient deed to the defendant, who then rejected the same without legal right to do so. Plaintiff further alleged that the defendant, Shields, and his attorney never informed him of any objections to the title till after the 15 days had expired, and also waived the time limit, if any, by continued negotiations toward the consummation of the deal. That the defendant's final rejection of the title under the circumstances amounted to a breach of the contract on his part, misleading the plaintiff to his injury in the amount sued for.

The plaintiff claimed the $400 as liquidated damages and alleged facts and circumstances tending to make it such, and further alleged, in the alternative, that if it was not so provided by the terms of the contract, then he was, by the conduct of the defendant, put to unnecessary expenses exceeding that amount, and that the actual damages therefrom accruing to plaintiff from defendant's conduct was in excess of $400 in the aggregate, and that he was entitled to recover the same as actual damages.

The $400 was deposited with the Farmers First National Bank of Stephenville, Texas, and the bank was made party to the suit, and it asks for a judgment and order of the court directing it to pay the sum to the party found entitled to the same.

At the conclusion of the evidence, the plaintiff and the defendant each requested an instructed verdict in his behalf, but the court, considering issues of fact raised by the evidence, submitted various special issues to the jury. In response thereto, the jury found:

(1) That the parties did not intend that the 15-day period of time should be of the essence of the contract. (In connection with that issue, the court defined the term "of the essence" as applied to time for the performance of an agreement, etc.)

(2) That appellee (Dunlap) procured title to the 1/11 mineral interest and tendered same to defendant (Shields) within a reasonable time.

(3) That appellant waived the 15-day period of time.

(4) That the $400 deposit was intended as liquidated damages.

(5) That the sum of money required to compensate appellee for his loss is $400.

At the close of the testimony, the appellant Shields filed a general motion for instructed verdict, but did not specify the grounds for his motion, as required by Rule 268, Civil Procedure.

There is no contention here that the title finally tendered the appellant was not a good one, but appellant claims it was not tendered within the time contemplated and that he was within his rights in calling the deal off in his letter of March 21, 1942, which was received two or three days later by appellee.

The contract of sale, dated February 9, 1942, provided that Shields should pay $5,000 for the land and also make deposit of the $400 as a guarantee of his performance. In addition, it contained the provision that "said sum of money is agreed to be delivered to the party of the first part within fifteen days and after a deed has been signed and delivered to the party of the second part and after the title to said property has been passed on as good by a competent attorney * * *"

In the original transaction, Shields was represented by an attorney who wrote said contract, and Dunlap acted for himself till March 9, 1942. Dunlap's land was covered by a federal farm land mortgage, and he at once procured and tendered his abstract for examination.

In a letter dated February 19, 1942, said attorney, in behalf of Shields, wrote Dunlap as follows: "You may make arrangement to come down to my office Saturday morning, February 21, as I think that I will have everything ready to close the deal between you and Mr. Shields. Be sure and bring your wife along for she will have to sign the deed. I have likewise notified Mr. Shields. Everything looks all right in the abstract except for a few things we will have to straighten out after you all get here."

If the deal had been confined to the 15-day period following the contract date of February 9, that period would have expired by February 25. However, on March 4, 1942, Shields' said attorney wrote Dunlap again, saying: "I have written Mr. Shields to come by after you either Monday or Saturday; in order that we may close the deal; therefore you can be looking for him."

On the evening of Monday, March 9, Dunlap learned for the first time from Shields' attorney certain objections would be urged to his title. Such objections were also evidenced by the attorney's opinion dated February 20, 1942, but not delivered to Dunlap till March 10, several days after the expiration of the 15-day period mentioned in the contract. On March 10 Dunlap, with Shields' consent, proceeded to clear the title of such alleged defects and succeeded in doing so by March 23, 1942. On the other hand, Shields, by his letter dated March 21, 1942, and received "a day or two" later, apparently March 23, attempted to call off the deal.

March 18, 1942, Dunlap's attorney wrote Shields that the title was being cleared of the alleged defects pointed out and that Dunlap would insist on the performance of the contract. In his testimony, Shields concedes that on March 10 he extended to Dunlap an additional ten days in which Dunlap could proceed with clearing his title of the alleged defects. It is also undisputed that before the ten days expired, namely, March 15, 1942, Shields wrote Dunlap a new proposition, in which he sought to purchase the land for $900 less than originally agreed upon. In that letter, he said in part:

"I am sorry everything turned out as it did but I can't risk so much. The judgment of Underwood * * * would amount to over $600, and the oil royalties would cost me 3 or 400 dollars to get off the titles.

"I hope you can get a deal on your place for it looks like you are in a bad way for the land interest—and back taxes are going to have to be paid at an early date.

"However I am going to make you a proposition and me take care of everything except the back taxes. Now it will look like mighty little for you but by the time I square up with the royalties and judgment the place will cost me more than I was to pay * * *

"That is a poor trade for me for I guess I will have to let the place lay idle this year. However you can move at once to your place.

"You can write me by return mail. Our time is up on the other deal the last of the week."

As stated, the evidence reflects that on March 23 Dunlap perfected the title in the matter of outstanding mineral interests, and the same day Shields, by the letter dated March 21, attempted to call off the deal.

It will be observed that the contract provides that the seller (Dunlap) should remain in possession of the land as tenant until November 1, 1942. Attention is directed to this circumstance, for its bearing, if any, on the materiality of delivering title within the 15 days.

■ We are inclined to the view that, under all the circumstances, the court would have been justified in concluding that a delivery of good title within such 15 days was not required, but be- that as it may, the submission of the question of whether the parties intended that such provision should be of the essence of the contract was most favorable to the appellant, and the trial court committed no error against him in submitting such issue to the jury, especially since the contract did not expressly make time of the essence, and the subject matter of the transaction was not such that the court could take judicial notice ·that the parties obviously intended to make it so.

■ In Taylor Milling Co. v. American Bag Co., Tex.Civ.App., 230 S.W. 782, 784, it was held: "Whether or not time is of the essence of a contract is a question of fact for a jury, unless the contract *expressly* makes it so, or unless the subject-matter of the contract is such that a court will take judicial knowledge of the fact that the parties obviously intended that time should be of the essence of the. contract."

■ In 10 T.J. p. 417, § 239, the rule is stated thus:

"Ordinarily time is not of the essence and intention to make it so must be clearly manifested. Courts are said to be disinclined to construe stipulations as to time as being of the essence unless compelled to do so by the *express* language of the contract or circumstances of the case which show such an intention; they will not be so regarded unless made so expressly or by implication.

＊　　＊　　＊　　＊　　＊

"Whether or not time is of the essence is a question for the court where the contract is unambiguous, or the facts are undisputed; but is a question for the jury where time is not *expressly* made of the essence, unless the subject matter is such that the court will take judicial knowledge of the fact that the parties obviously intended it to be so."

■ Section 240 of the text says:· "Time is generally regarded as of the essence of contracts for the sale of personalty, and as not of the essence of contracts for the sale of land."

■ In 43 T.J. p. 142, § 88, the rule is likewise stated: "Time is not ordinarily of the essence of a contract for the sale of real property, but it may be made so by an *express* agreement of the parties." (All italics ours.)

■ Pertinent to kindred issues presented by the appeal is the rule of law stated in 43 T.J. p. 142, § 87, as follows: "Moreover, when it appears that the parties did not intend that a specification of time should be obligatory, performance within a *reasonable* time will be sufficient to prevent a breach of the contract. As to what constitutes a reasonable time depends upon the circumstances of the particular case."

■ Bearing on the issue of waiver, also presented by this appeal, is the rule of law stated in 10 T.J. p. 428, § 246: "A waiver may be express or implied. Failure to perform within the time prescribed is, waived by treating the contract as being in full force after the time has expired, or by · accepting performance after such time, or by acts and conduct leading the opposite party to believe that performance within the time prescribed will not be insisted upon."

■ As to what constitutes a reasonable time under the above rules depends upon the circumstances of the particular case and is generally for the jury. Chandler .v. Riley et al., Tex.Civ.App., 210 S.W. 716; Texas & P. R. Co. v. Jowers, Tex. Civ.App., 110 S.W. 946; Galveston-H. & S. A. R. Co. v. Cade, 100 Tex. 37, 94 S.W. 219; 43 T.J., p. 142, sec. 87, 88; 13 C.J., p. 687; 17 C.J.S., Contracts, § 504.

■ Since the appellant's motion for an instructed verdict set out no grounds upon which he based such claim, and since the contract did not expressly make time of the essence and the facts and circumstances reasonably raised issues of fact submitted by the court to the jury, we are of the opinion that no error is shown by the appellant's first and second points, and the same are overruled.

■ Obviously,· the appellee had a reasonable time in which to cure such defects of title as were finally pointed out, and the jury's finding that he did so within a reasonable time is conclusive on that issue, and point 3 is overruled.

■ Neither was there any error in the trial court's submitting to the jury said issue of waiver. We are inclined to the view the court could have held as a mat- · ter of law, as the jury later found on that issue. Submitting the issue was favorabŀe to the appellant, and no error is disclosed

by that point, which is overruled. Each of the appellant's assignments or points have been duly examined, and finding no error, the same are overruled, and the judgment of the trial court is affirmed.