**SIDERIUS, INC., Appellant,**

v.

**WALLACE COMPANY, INC. and Texas Commerce Bank National Association, Appellees.**

**No. 1137.**

Court of Civil Appeals of Texas, Tyler.

May 31, 1979.

J. Clifford Gunter, III, William Ikard, Bracewell & Patterson, Houston, for appellant.

Jeffrey A. Davis, Grant Cook, Reynolds, Allen & Cook, Alvin M. Owsley, Jr., Baker & Botts, John E. Bagalay, Jr., Houston, for appellees.

SUMMERS, Justice.

The instant case resulted from the consolidation of two lawsuits. The first suit was initiated by Melton Steel Company, hereinafter referred to as "Melton," against Wallace Company, Inc., hereinafter referred to as "Wallace," and Siderius, Inc., hereinafter referred to as "Siderius," alleging breach of contract and interference with contractual relationships. Subsequently, Wallace brought a separate action to enjoin Texas Commerce Bank, hereinafter referred to as the "Bank," from honoring a documentary draft presented by Siderius against a letter of credit which had been issued by the Bank at Wallace's request for Siderius' benefit. The two suits were consolidated by the trial court. Cross-actions were filed by both Wallace and Siderius; Wallace sought recovery from Siderius for fraudulently inducing it to enter into a contract with Siderius, and Siderius sought recovery from Wallace on grounds of breach of contract and from the Bank for wrongful dishonor of Siderius' draft against the letter of credit.

Originally, Siderius was going to sell 5,000 net tons of foreign steel pipe to Melton for approximately $715.00 per net ton. Melton, in a back-to-back transaction, intended to then sell the same pipe to Wallace. This agreement was conditioned upon Wallace's obtaining a letter of credit for Melton's benefit for approximately $4.1 million. Wallace was unable to obtain the letter of credit, and as a result, the deal fell through. Siderius then approached Wallace and offered to sell the pipe to Wallace directly for $715.00 per net ton, conditioned on Wallace's obtaining a letter of credit for Siderius' benefit.

Based upon Wallace's application, Texas Commerce Bank issued an irrevocable documentary letter of credit for Siderius' benefit on August 1, 1974. The terms of the letter of credit specified that:

"GENTLEMEN:

WE HEREBY OPEN OUR IRREVOCABLE LETTER OF CREDIT IN YOUR FAVOR FOR THE ACCOUNT OF Wallace Company, Inc.—P.O. Box 2597—Houston, Texas 77001 FOR A SUM OR SUMS NOT EXCEEDING IN THE AGGREGATE THE SUM OF Three Million Seven Hundred Fifty-Three Thousand Seven Hundred Fifty and No/100 U.S. Dollars ($3,753,750.00). AVAILABLE BY YOUR DRAFTS ON us AT _____ sight _____ TO BE ACCOMPANIED BY:

–Commercial Invoice.

–Customs Invoice.

–Certificate of Origin.

–Packing List (Including Tallies)—Dock Delivery Order.

–Negotiable Insurance Certificate of Policy covering Marine and War risks including All Risk—Warehouse to Warehouse for 110% of full invoice value.

–Full set of On Board Ocean Bills of Lading to the order of Texas Commerce Bank National Association, Notify: W. A. Sammis, Wallace Co., Inc., Box 2597, Houston, Texas 77001, Telephone Number 713–675–2661, showing 'Freight Prepaid.'

EVIDENCING SHIPMENT from 1. Italian Port, 2. & 3. Israel Port to Port of Houston, Texas U.S.A., not later than November 30, 1974 of:

1. 2500 N.T. (± 5%) 6⅝" O.D. × .280 Wall × 18.97 # API5LB ERW DRL BLK PE BEV DRL Steel Line Pipe to latest edition API Specifications.

2. 1500 N.T. (± 5%) 10¾" O.D. × .365 × 40.48 # ditto above except API 5L X–42.

3. 1000 N.T. (± 5%) 12¾" O.D. × .375 ×.49.56 # ditto above except API 5L X–42.

5000 N.T. TOTAL

\* \* \* \* \* \*

DRAFTS MUST BE NEGOTIATED AND PRESENTED TO US ON OR BEFORE February 1, 1975. . . .

\* \* \* \* \* \*

THIS CREDIT IS SUBJECT TO THE 'UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (1962 REVISION), INTERNATIONAL CHAMBER OF COMMERCE, BROCHURE NO. 222.' "

On August 12, 1974, Wallace issued its purchase order for the three shipments of steel pipe described above which expressly stated that it was based on the letter of credit issued by the Bank. Siderius issued its sales confirmation on August 21, 1974, which noted that payment was to be by the letter of credit described above.

The terms of the letter of credit were amended by letters of amendment five times,[1] each of which stated "ALL OTHER

---

1. The pertinent portions of letters of amendment nos. 1-3 provided as follows:
   Letter of Amendment No. 1
   "DELETE: Customs Invoice
   DELETE: Negotiable Insurance Certificate of Policy covering Marine and

War risks including All Risk—Warehouse to Warehouse for 110% of full invoice value.
   ADD: Copy of negotiable Insurance Certificate of Policy covering

CONDITIONS REMAIN UNCHANGED." The shipping deadlines for all three shipments of steel pipe, as specified originally in the letter of credit, were amended by agreement of the parties. In early November, 1974, Siderius requested an extension of the shipping deadline in regards to the pipe to be manufactured in Italy; Wallace consented. In order to reflect this modification, the letter of credit was amended on November 13, 1974, to allow the bills of lading pertaining to the Italian pipe to be dated no later than January 15, 1975. In addition, the expiration date of the letter of credit was postponed to February 28, 1975.[2] Subsequently, Siderius requested that the shipping deadline for the Israeli pipe also be extended. Wallace agreed, and the letter of credit was amended to change the shipping deadline for these portions of the pipe from November 30, 1974, to December 15, 1974.[3] In late December or early January, a request was once again made by Siderius seeking a further extension for shipment of the Italian pipe. Wallace refused to agree to anymore extensions and the January 15, 1975, deadline remained in force. The two shipments of pipe manufactured in Israel were shipped, delivered in Houston, and Siderius' first and second drafts on the letter of credit in regards to these two shipments were honored by the Bank. The dispute in the instant case pertains to the shipment of the portion of pipe manufactured in Italy.

The pipe in question was to be shipped from the Italian port of Ravenna on board the M/V *Slavonija*. On February 20, 1975, Siderius presented to the Bank a bill of lading and other documents along with the third draft for payment in an amount in excess of $1.8 million. The bill of lading was dated January 15, 1975, and on its face appeared to conform to the terms of the letter of credit. Wallace notified the Bank that it suspected that the bill of lading presented by Siderius in the third draft was fraudulent because the shipping requirements had not been met and informed the Bank that it declined to waive any defects. The Bank dishonored Siderius' first presentation of the third draft on February 24, 1975, as nonconforming because the bill of lading was issued under and subject to a charter party, the insurance certificate was short, and the dock delivery order was improper. In addition, Wallace notified Siderius that it was rejecting the Italian pipe on the grounds that the shipment of such pipe failed to conform to the contract terms. It is undisputed that on January 15, 1975, the *Slavonija* had not yet arrived in the Italian port of Ravenna and did not reach that port until January 24, 1975. The loading of the pipe on board the *Slavonija* was not completed until January 29, 1975.

Marine and War risks including All Risk—Warehouse to Warehouse for 110% of full invoice value now acceptable.
ADD: Separate Bill of Lading for each size must be presented. Copy of non-negotiable Bill of Lading now acceptable."
Letter of Amendment No. 2
"The reference 'To the order of Texas Commerce Bank National Association' is hereby deleted on the requirement for copy of non-negotiable Bill of Lading."
Letter of Amendment No. 3
"The requirements for the Bill of Lading to show 'Freight Prepaid' and Notify: W. A. Sammis, Wallace Company, Inc., Box 2597, Houston, Texas 77001, Telephone Number 713–675–2661 are hereby deleted."

2. Letter of Amendment No. 4 provided in part that:
"1. On Item Number I only, Bills of Ladings must be dated not later than January 15, 1975.
"2. Drafts must be negotiated and presented to us on or before February 28, 1975, on Item Number I only.
"3. We hereby add this to the description of the letter of credit:

1–6⅝" 'to be manufactured in Italy'
2–10¾" 'to be manufactured in Israel'
3–12¾" 'to be manufactured in Israel' "

3. Letter of Amendment No. 5 provided in part that:
"Shipping date on Items 2 and 3 is hereby extended to December 15, 1974."

Although the letter of credit expired on February 28, 1975, Siderius returned to the Bank and made a second presentation of the third draft on March 7, 1975. A new dock delivery order and copy of the bill of lading with charter party language removed were submitted to the Bank by Siderius. The insurance certificate remained short and the bill of lading continued to be dated January 15, 1975. Wallace refused to waive any defects, including late presentation, and the Bank dishonored Siderius' second presentation of the third draft. Subsequently, Wallace applied for a temporary injunction in order to enjoin the Bank from honoring Siderius' third draft because it was allegedly accompanied by false and fraudulent documents. On March 24, 1975, the trial court so enjoined the Bank. This injunction suit was consolidated with the suit initiated by Melton.

Trial was to a jury; however the Melton claim was settled during the trial. In response to the special issues submitted, the jury found that Siderius' representation to Wallace that the entire order of 5,000 net tons of pipe would be shipped no later than November 30, 1974, was a material factor in inducing Wallace to enter the contract, and that Wallace relied upon Siderius' representation. (Special Issues Nos. 2 and 4) In addition, the jury found that by the terms used in the letter of credit, as originally agreed, Siderius and Wallace intended to require Siderius to have the Italian Pipe loaded on board no later than November 30, 1974; and by the terms of the letter of credit, as amended, Siderius and Wallace intended to require Siderius to have the Italian pipe loaded on board no later than January 15, 1975. (Special Issues Nos. 5 and 6) The jury refused to find that by the terms of the letter of credit, Wallace and Siderius intended that a received-for-shipment bill of lading acknowledging receipt of the goods for shipment issued by January 15, 1975, would be sufficient to evidence shipment. (Special Issue No. 7) The jury also found that Wallace and Siderius intended in their agreement for time to be of the essence. (Special Issue No. 20)

In response to Special Issues Nos. 21, 22, and 23, the jury answered that the bills of lading presented to the Bank by Siderius represented that the Italian pipe was on board the ship in Ravenna on or before January 15, 1975, that such representation was false, and that Siderius knowingly and intentionally falsely represented the date the Italian pipe was on board the ship. In addition, the jury found that Siderius failed to act in good faith in arranging for shipment of the Italian pipe and in submitting documents to the Bank regarding that shipment. (Special Issue No. 6–A) The jury refused to find that Siderius performed or substantially performed its agreement with Wallace or that the documents presented to the Bank by Siderius in connection with the draft in question substantially complied with the letter of credit, as amended. (Special Issues Nos. 8, 8–A, and 11) The jury also refused to find that Wallace failed to act in good faith, that Wallace and the Bank conspired together to dishonor Siderius' draft, or that the Bank waived any defects in the draft in question by acceptance of nonconforming documents accompanying Siderius' first and second drafts. (Special Issues Nos. 20–A, 13, and 9) Finally, the jury refused to assess damages in favor of either Wallace or Siderius.

The trial court, on the basis of the jury's verdict, entered a judgment that Wallace and Siderius take nothing in regards to their respective claims. Wallace has not appealed the portion of the judgment denying it recovery against Siderius. From this judgment, Siderius has perfected this appeal, predicated upon thirty points of error. The points of error complain of the trial court's take nothing judgment in regards to both of Siderius' theories of recovery, against the Bank for alleged wrongful dishonor under Section 5–114(a), Tex.Bus. & Com.Code Ann. (Tex.U.C.C.1968), and against Wallace for alleged breach of the contract of sale.

Generally, a letter of credit transaction involves at least three separate and distinct contracts; (1) the underlying agreement between the buyer and the seller, (2)

the contract between the bank (the issuer) and the buyer (the customer) which precipitates the issuance of the letter of credit, and (3) the letter of credit itself which is the agreement between the issuer and the seller, the beneficiary of the letter of credit. *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109, 112 (Tex.Sup.1978); *Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461, 464–5 (2d Cir.1970). One of the most material aspects of a commercial letter of credit is its separation and independence from the underlying contract of sale. The issuer is not to become embroiled in controversies and disputes between the buyer and seller. The issuer deals in documents and not merchandise. Section 5–114(a), supra; *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, supra 578 S.W.2d at 114; *Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 885 (3rd Cir. 1977); *Courtaulds North America, Inc. v. North Carolina National Bank*, 528 F.2d 802, 805 (4th Cir. 1975). Therefore, we shall address the points of error in connection with Siderius' claim against the Bank for wrongful dishonor under the letter of credit separately from the points of error dealing with its claim against Wallace for breach of the contract of sale.

## LETTER OF CREDIT

■ In the case at hand, we are presented with a documentary letter of credit; the issuer agrees to honor a timely draft accompanied by the documents specified in the letter of credit. The issuer deals only in documents and is not concerned with the merchandise which is the subject of the underlying contract between the buyer and the seller. If the beneficiary presents documents which precisely and strictly conform to the requirements of the letter of credit, the issuer must honor the draft. Section 5–114(a), supra;[4] *H. Ray Baker, Inc. v. Associated Banking Corporation*, 592 F.2d 550, 553 (9th Cir. 1979); *Chase Manhattan Bank v. Equibank, supra*; *Courtaulds North America, Inc. v. North Carolina National Bank*, supra at 805–6. The rule of strict conformity is necessary because the issuer, dealing solely in documents, should not be required to examine the performance of the underlying transaction to determine if the terms of the letter of credit have been fulfilled.

■ An exception to this general rule, requiring an issuer to honor a draft which is conforming on its face, is found in Subdivision (b)(2) of sec. 5–114, supra.[5] Under the limited circumstances established by section 5–114(b)(2), supra, the issuer has the option to honor or dishonor, or the customer may enjoin the issuer from honoring such a draft. *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943, 948 (N.Y. 1976); *Dynamics Corporation of America v. Citizens and Southern National Bank*, 356 F.Supp. 991, 996 (N.D.Ga.1973); Tex.Bus. & Com.Code Ann. sec. 5–114(b)(2), comment 2,

---

4. Subsection (a) of section 5–114, Tex.Bus. & Com.Code Ann. (Tex.U.C.C.1968), provides in part:

   "(a) An issuer *must* honor a draft or demand *for payment which complies with the terms* of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." [Emphasis added.]

5. Subsection (b) of section 5–114, Tex.Bus. & Com.Code Ann. (Tex.U.C.C.1968), provides in part:

   "(b) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document . . . is forged or fraudulent or there is fraud in the transaction

   (1) the issuer *must* honor the draft or demand for payment if honor is demanded by a . . . holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Section 3.302) . . . ; and

   (2) in all other cases as against its customer, an issuer acting in good faith *may* honor the draft or demand for payment despite notification from the customer of fraud, forgery, or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor." [Emphasis added.]

supra. This rule has been recognized as a codification of the pre-code case law as articulated in *Sztejn v. J. Henry Schroder Banking Corporation*, 177 Misc. 719, 31 N.Y. S.2d 631 (N.Y.Sup.Ct.1941) and *Old Colony Trust Company v. Lawyers' Title and Trust Company*, 297 F. 152 (2d Cir.) cert. denied, 265 U.S. 585, 44 S.Ct. 459, 68 L.Ed. 1192 (1924). It is undisputed that Siderius was not an innocent third party as defined in subsection (b)(1) of section 5–114, supra.

■ We shall first address the complaint raised by Siderius in its first point of error. Point of error no. 1 contends that the trial court erred in not granting Siderius a judgment on the verdict because, based upon the jury's responses to Special Issues 10, 24, and 25, the Bank wrongfully dishonored Siderius' third draft. This contention is absent of any merit. In Special Issue No. 10, the jury found that the Bank's acceptance of the first and second drafts established a course of performance or course of dealings by which Siderius "believed that by making a same or similar presentation on February 20, 1975, it would be accepted." The jury refused to find in Special Issue No. 24 that the omission of the charter party language from the bill of lading presented to the Bank on March 7, 1975, made such bill of lading incomplete. Special Issue No. 25 was conditionally submitted to the jury, conditioned upon an affirmative answer to Special Issue No. 24, and, as a result, was not answered by the jury.

Special Issue No. 10 refers to the first presentation of the third draft made on February 20, 1975. The jury's affirmative answer does not entitle Siderius to a judgment against the Bank for wrongful dishonor. Siderius argues that the Bank's acceptance of the first and second drafts, which allegedly contained some defects, constituted an amendment of the letter of credit by course of performance or course of dealings. It is not necessary for us to address this argument to dispose of this point; therefore we will assume for the moment, without deciding, that the letter of credit was so amended. No special issue was requested or submitted regarding whether the documents presented by Siderius on February 20, 1975, were the "same or similar" to those presented earlier with the first and second draft. We deem the trial court to have made a finding, in support of its judgment that the documents accompanying the third draft were not the "same or similar" and there is probative evidence in the record to support such a finding. *Reliable Life Insurance Company v. Torres*, 509 S.W.2d 409, 411 (Tex.Civ.App.—Austin 1974, ref'd n.r.e.).

■ Special Issue No. 24 refers to the second presentation of the third draft made on March 7, 1975, seven days after the expiration date of the letter of credit. No allegations are made by Siderius nor does the record reflect that any extension of the February 28, 1975, expiration date was ever considered or agreed upon by the parties. It is undisputed that Siderius' second presentation of the third draft was untimely, and an issuer is under no obligation to honor a draft presented by the beneficiary after the expiration date of the letter of credit. *Liberty National Bank & Trust Company v. Bank of America National Trust & Savings Association*, 218 F.2d 831, 840–1 (10th Cir. 1955). Siderius was not entitled to a judgment on the verdict based upon Special Issues 10, 24, and 25, and point of error no. 1 is overruled.

Siderius asserts a number of points of error which all complain that the trial court erred by refusing to disregard the jury's verdict or answers to particular special issues and grant Siderius a judgment non obstante veredicto against the Bank for wrongful dishonor of the third draft. Prior to addressing these points of error, a review of the familiar rules regarding points of this nature is appropriate.

■ A judgment non obstante veredicto may be rendered by the trial court only where a directed verdict would have been proper. The trial court was not authorized to grant Siderius a judgment non obstante veredicto unless Siderius was, as a matter of law, entitled to judgment. Rule 301, T.R.C.P.; *Dittberner v. Bell*, 558 S.W.2d 527, 531 (Tex.Civ.App.—Amarillo

1977, ref'd n. r. e.); *Wagner v. Betts*, 496 S.W.2d 190, 193 (Tex.Civ.App.—Tyler 1973, ref'd n. r. e.). A special issue finding may be disregarded where such finding has no support in the evidence or is immaterial. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex. Sup.1967); *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.Sup.1966). In reviewing a trial court's denial of a motion for judgment non obstante veredicto, the evidence must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962). Where a finding has support in the evidence, the trial court may not render a judgment non obstante veredicto, even though the great weight and preponderance of the evidence is to the contrary. *Gulf, Colorado & Santa Fe Railway Company v. Deen*, 158 Tex. 466, 312 S.W.2d 933, 937, cert. denied, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958); *Newitt v. Camden Drilling Company*, 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, n. w. h.); *American Produce & Vegetable Company v. Campisi's Italian Restaurant*, 533 S.W.2d 380, 383 (Tex.Civ.App.—Tyler 1975, ref'd n. r. e.). A negative finding by a jury in response to a special issue means that the party with the burden of proof failed to carry its burden in proving that fact. *C. & R. Transport, Inc. v. Campbell*, supra. The trial court cannot disregard a jury's negative finding and substitute an affirmative finding unless the evidence conclusively establishes such affirmative finding. *Bond v. Otis Elevator Company*, 388 S.W.2d 681, 685 (Tex.Sup.1965); *Brownsville & Matamoros Bridge Company v. Null*, 578 S.W.2d 774, 780 (Tex.Civ.App.—Corpus Christi 1979, n. w. h.).

■ It is Siderius' position that it complied with the terms of the letter of credit, as amended, and that its action for wrongful dishonor may not be defeated by the Bank's allegations of fraud. Therefore, concludes Siderius, it was entitled to a judgment non obstante veredicto against the Bank for wrongfully dishonoring Siderius'

third draft. The Bank justifies its dishonor upon two grounds. First, the Bank argues that the documents tendered by Siderius with the third draft did not strictly conform to requirements of the letter of credit, as amended, and second, upon being notified by Wallace that fraudulent documents had been tendered by Siderius, the Bank had the option to honor or dishonor.

The letter of credit, as amended, required that the draft in connection with the Italian shipment be accompanied by a copy of an "on board" bill of lading dated no later than January 15, 1975. Article 18 of the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce (1962 Revision), states:

> "Unless otherwise specified in the credit, Bills of Lading must show that the goods are loaded on board.
>
> "Loading on board may be evidenced by an *on board Bill of Lading*, or by means of a notation to that effect dated and signed or initialled by the carrier or his agent, and the date of this notation shall be regarded as the date of loading on board and shipment." [Emphasis added.]

The Carriage of Goods by Sea Act of 1936, 46 U.S.C.A. section 1303(7) (1970), states that after the goods are loaded on board, the bill of lading to be issued by the carrier shall be a "shipped" bill of lading. The bill of lading tendered by Siderius with its third draft expressly stated "SHIPPED in apparent good order   .   .   .," and the only date on the instrument was January 15, 1975. The terms of the letter of credit required that Siderius present a copy of the bill of lading showing that the Italian pipe was loaded on board the vessel no later than January 15, 1975. The bill of lading presented by Siderius represented that the pipe was so loaded, even though the ship had not yet arrived in the Italian port and wasn't loaded until two weeks later.

In response to Special Issues Nos. 6–A, 22, and 23, the jury found that Siderius failed to act in good faith in arranging for the shipment of the Italian pipe and in submitting the documents to the Bank in

regards to that shipment, that the representations made in the bill of lading presented with the third draft were false, and that Siderius knowingly and intentionally falsely represented the date that the Italian pipe was on board the ship. A defense under section 5–114(b), supra, may present questions of fact, and the trial court properly submitted these issues, having been raised by probative evidence, to the jury. *Dynamics Corporation of America v. Citizens and Southern National Bank*, supra at 998; *Marine Midland Grace Trust Company of New York v. Banco Del Pais, S.A.*, 261 F.Supp. 884, 890 (S.D.N.Y.1966).

Siderius argues that the Bank was foreclosed from asserting the fraud defense against the action for wrongful dishonor at the time of trial. By notifying Siderius that dishonor was based upon three specific defects (bill of lading subject to a charter party, insurance short, and improper dock delivery order), Siderius contends that the Bank waived all other defenses. Siderius chiefly relies on *Barclays Bank D. C. O. v. Mercantile National Bank*, 481 F.2d 1224 (5th Cir. 1973), cert. dismissed, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974).

■ The general rule, as applied to letters of credit, is that where an issuer formally places dishonor on a specific ground, the issuer is held to have waived all others. *Barclays Bank D. C. O. v. Mercantile National Bank*, supra at 1236; *Bank of Taiwan, Ltd. v. Union National Bank of Philadelphia*, 1 F.2d 65, 66 (3rd Cir. 1924). The rationale of the rule is that the issuer should not be allowed to lull the beneficiary into believing no problem exists with the documentation while there is still time for the beneficiary to cure and then assert the defect as a defense to an action on the draft once it is too late to remedy the defect. *Barclays Bank D. C. O. v. Mercantile National Bank*, supra at 1237; *Dovemuehle, Inc. v. East Bank of Colorado Springs, N. A.*, 563 P.2d 24, 27 (Colo.Ct.App.1977). However, the application of the rule confining an issuer to its stated grounds for dishonor is limited to situations where the statements have misled the beneficiary who

could have cured the defect but relied on the stated grounds to its injury. *Flagship Cruises, Ltd. v. New England Merchants National Bank of Boston*, 569 F.2d 699, 703 (1st Cir. 1978); *Wing On Bank Limited of Hong Kong v. American National Bank and Trust Company of Fort Lauderdale*, 457 F.2d 328 (5th Cir. 1972); *Old Colony Trust Company v. Lawyers' Title & Trust Company*, supra at 156.

■ In the instant case, the ship arrived into the port of Ravenna after January 15, 1975. The lack of formal notification by the Bank of any fraud in the bill of lading did not prejudice Siderius or prevent cure on the part of Siderius. No cure was possible; therefore the Bank has not waived its right to assert fraud as a defense under section 5–114(b), supra, to Siderius' action for wrongful dishonor.

■ In the alternative, Siderius asserts that the alleged fraud was insufficient to justify dishonor of the third draft. We disagree. The issuer of a documentary letter of credit, dealing in documents and not merchandise, must be able to rely on the accuracy and integrity of the documents presented by the beneficiary. *Banco Espanol de Credito v. State Street Bank & Trust Company*, 385 F.2d 230, 234 (1st Cir. 1967), cert. denied, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968). In the instant case, the fraud related to the documents themselves and not the pipe which was the subject of underlying contract of sale; therefore the fraud was sufficient, upon notification by the customer, to give the Bank the option to honor or dishonor. Section 5–114(b), supra; *Shaffer v. Brooklyn Park Garden Apartments*, 250 N.W.2d 172, 180 (Minn.1977).

■ In addition to its defense under section 5–114(b), the Bank contends that it was justified in dishonoring Siderius' third draft because the documents failed to strictly comply with the terms of the letter of credit. Unless Siderius strictly conformed to the requirements of the letter of credit, the Bank was not obligated to honor the draft. *H. Ray Baker, Inc. v. Associated Banking Corporation*, supra; *Chase Manhattan Bank*

*v. Equibank*, supra. The jury, in Special Issue No. 11, refused to find that Siderius had substantially complied with the conditions of the letter of credit, as amended. Siderius failed to carry its burden of proving substantial compliance, let alone strict compliance. Since Siderius failed to conclusively establish that it strictly complied with the requirements of the letter of credit, the trial court correctly refused to disregard the jury's negative finding.

Siderius was not entitled, as a matter of law, to a judgment against the Bank for wrongful dishonor of the third draft, and the trial court correctly refused to grant Siderius' motion for judgment non obstante veredicto against the Bank. Siderius' points of error nos. 2, 4, 6, 8, 9, and 10 are hereby overruled.

■ Siderius' points of error nos. 3, 7, 14, 17, 23, 26, and 27 argue that the trial court erred in refusing to disregard the jury's responses to particular special issues and render judgment for Siderius because such findings were against the great weight and preponderance of the evidence. A trial court may not render a judgment non obstante veredicto on factual insufficiency grounds. These points of error are without merit and are hereby overruled.

■ Siderius' point of error no. 5 complains that the trial court erred in "denying Siderius' motion for new trial because construction of the documents presented under a letter of credit is a question of law for the trial court, outside the province of the jury." In response to Special Issue No. 21, the jury found that the bill of lading tendered by Siderius with the third draft represented that the pipe was loaded on board the vessel for shipment on or before January 15, 1975. We do not believe that the bill of lading was ambiguous; therefore construction of the bill of lading was a question of law for the trial court. The document was a shipped bill of lading which represented that the pipe was loaded on board on or before January 15, 1975. The error, though, on the part of the trial court in submitting this issue, in light of the jury's answer, was harmless and does not

justify reversal. Rule 434, T.R.C.P. Point of error no. 5 is overruled.

Siderius' eleventh point of error contends that the trial court erred in failing to award damages of $1,719,987.10 to Siderius for the Bank's wrongful dishonor of the third draft. In light of our disposition of Siderius' earlier points of error, we need not address this point, and Siderius' point of error no. 11 is overruled.

## CONTRACT OF SALE

In addition to the theory of recovery alleging that the Bank was guilty of wrongful dishonor, Siderius asserted that Wallace was liable for breach of the contract of sale. On February 24, 1975, Wallace notified Siderius that it was rejecting the Italian pipe because the shipment of such pipe failed to conform to the contract term regarding the shipping date. Wallace argues that time was of the essence and that Siderius' failure to have the Italian pipe loaded on board the vessel on or before January 15, 1975, was a material breach of the contract which justified Wallace's rejection. The trial court submitted the issue to the jury, and the jury found that Wallace and Siderius intended for time to be of the essence in their agreement.

Siderius replies that the trial court erred in denying Siderius' motion for judgment non obstante veredicto because, as a matter of law, time was not of the essence; whether time was of the essence was a question of law for the court, outside the province of the jury; even if time was of the essence, it was waived by Wallace as a matter of law; and, as a matter of law, Siderius' performance did not amount to a material delay. We conclude that the trial court correctly overruled Siderius' motion for judgment non obstante veredicto.

■ The general rule is that time is not of the essence in a contract unless the parties expressly make it so, or there is something in the nature or purpose of the contract and the circumstances surrounding it which make it apparent that the parties intended that time be of the essence. *Laredo Hides Company, Inc. v. H & H Meat*

*Products Company, Inc.,* 513 S.W.2d 210, 216 (Tex.Civ.App.—Corpus Christi 1974, ref'd n. r. e.); *McKnight v. Renfro,* 371 S.W.2d 740, 745 (Tex.Civ.App.—Dallas 1963, ref'd n. r. e.). Whether or not time is of the essence is a question of fact for the jury unless the contract expressly makes time of the essence, or the subject matter of the contract is such that the court may take judicial knowledge of the fact that the parties obviously intended for time to be of the essence. *Lockhart-Hutchens v. Bergstrom,* 434 S.W.2d 453, 456 (Tex.Civ.App.—Austin 1968, ref'd n. r. e.); *Shields v. Dunlap,* 174 S.W.2d 642, 645 (Tex.Civ.App.—Eastland 1943, n. w. h.); *Taylor Milling Company v. American Bag Company,* 230 S.W. 782, 784 (Tex.Civ.App.—Austin 1921, n. w. h.). When time is found to be of the essence, performance by a party at or within the time specified is essential to his right to require performance by the other party. *McKnight v. Renfro,* supra; *Von Harten & Clark, Inc. v. Nevels,* 234 S.W. 676, 679 (Tex.Civ.App.—Amarillo 1921, n. w. h.).

In the instant case, Wallace and Siderius did not expressly stipulate that time was of the essence in performance of their agreement. The purchase order issued by Wallace on August 12, 1974, described the shipments as "C.I.F. Duty Paid For Direct Discharge As Outlined In The Sales Order And Letter Of Credit." Both the purchase order and Siderius' sales confirmation, issued on August 21, 1974, anticipated the pipe to leave the mills in October, 1974, for arrival in the U.S.A. in November, 1974. The letter of credit, as previously discussed, required the pipe to be loaded on board the vessels no later than November 30, 1974. It is undisputed that the original shipping deadline, as agreed upon in the purchase order and sales confirmation, was extended by a subsequent agreement of the parties, evidenced by the amendment to the letter of credit. The agreement, as amended, required the Italian shipment of pipe to be loaded on board ship no later than January 15, 1975. There is evidence in the record that Siderius offered Wallace a $75,000.00 reduction of the price of the Italian pipe in return for a further extension of the shipping date to January 31, 1975. Wallace refused to agree to any further extension. The record also reflects that during the period of time here in question, the prices of steel products and pipe underwent some dramatic fluctuations.

The fact that parties to a contract have entered into a new agreement extending the time for performance of the contract is evidence that the parties considered time to be material. *Garrison v. Cooke,* 96 Tex. 228, 72 S.W. 54, 56 (1903); 17A C.J.S., Contracts, section 504(1), p. 790. Where the subject matter of a contract is of a fluctuating or speculative value it is often held that the parties have intended for time to be of the essence. *United Irrigation Company v. Carson Petroleum Company,* 283 S.W. 692 (Tex.Civ.App.—San Antonio 1926, dism'd.); *Von Harten & Clark, Inc. v. Nevels,* supra. Upon reviewing the evidence in light of the rules previously discussed in this opinion, we conclude that there was evidence to support the jury's finding that Wallace and Siderius intended that time be of the essence in their agreement. The trial court properly refused to disregard the jury's finding.

On appeal, Siderius has claimed that Wallace waived time of the essence as a matter of law. No special issue regarding waiver of time is of the essence was submitted to the jury, and the record fails to show that any such issue was requested by Siderius. Waiver is a question of intention and is a question of fact where it is a matter of inference. *Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855, 865 (1958); *Smith v. Hues,* 540 S.W.2d 485, 489 (Tex. Civ.App.—Houston [14th Dist.] 1976, ref'd n. r. e.). The evidence fails to conclusively establish that Wallace waived time is of the essence, and Siderius has therefore waived this claim. Rule 279, T.R.C.P.

As a result of Siderius' failure to perform within the time specified by the parties' agreement, Siderius was not entitled to recover against Wallace for rejecting the nonconforming shipment. Siderius' points of error nos. 18, 20, 21, 22, and 24 are hereby overruled.

In light of our disposition of the points of error above, we need not address Siderius' remaining points of error. We have reviewed appellant's points of error and consider them to be without merit. The judgment of the trial court is affirmed.