**GATX LEASING CORPORATION and GLC Finance Corporation, Appellants,**

v.

**DBM DRILLING CORPORATION and Frost National Bank, Appellees.**

**No. 04–83–00216–CV.**

Court of Appeals of Texas,
San Antonio.

Aug. 3, 1983.

Reese Harrison, Jr., San Antonio, for appellants.

Thomas T. Rogers, Austin, Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from an order of the trial court granting a temporary injunction. The appellee, DBM Drilling Corporation, obtained the injunction which prohibits appellants, GATX Leasing Corporation and GLC Finance Corporation, from presenting and appellee, Frost National Bank, from honoring an irrevocable stand-by letter of credit. Frost was allowed to interplead as a stakeholder and has deposited the funds into the registry of the court. This case presents questions as to the appropriate circumstances under which an injunction should be allowed under Tex.Bus. & Com. Code Ann. § 5.114(b)(2) (Vernon 1968) against the presentation or honor of a letter of credit and the use of interpleader by an issuer bank. We reverse and order that the temporary injunction be dissolved and that the bank's petition in interpleader be stricken.

This dispute arises from a letter of credit used as a form of guarantee in a sale-lease back arrangement between several of the parties. GATX is a California corporation with offices in San Antonio, Texas. GLC Finance is a subsidiary of GATX. SWD Drilling Partnership is an Oklahoma partnership engaged in the oil and gas business. DBM is a general partner of SWD. Throughout the period in question, SWD was authorized, under the partnership agreement as general partner, to bind the other general partners by entering into obligations for the partnership.

In April of 1982, SWD and GATX agreed that SWD would sell to GATX a drilling rig

for 3.6 million dollars. GATX, in turn, would lease back the rig to SWD, which would make monthly payments for the duration of a seven year lease term. At the end of the lease term, SWD could exercise an option to purchase the collateral, the rig, for 70% of "cost," which is defined by the lease as the initial selling price of 3.6 million dollars.

Under Oklahoma law, the sale-lease back arrangement could not be consummated while the rig was in operation. The parties couched the 3.6 million dollar transaction as a "bridge loan" during the short period before the rig was taken out of operation and conveyed to GATX. The bridge loan was secured by a security interest/chattel mortgage dated March 19, 1982 which covered the rig. The bridge loan was supported by three personal guarantees and by three letters of credit, one of which, is the subject of this law suit. On July 12, 1982, after the rig was taken out of operation, it was conveyed by SWD to GATX and was promptly leased back on July 13, 1982. A financing statement had been on file with the office of Oklahoma Secretary of State, but was terminated on July 23, 1982. The financing statement establishes priority among secured parties and does not effect the relationship between creditor and debtor. Tex.Bus. & Com.Code Ann. §§ 9.203, 9.301, 9.302, 9.303, 9.312 (Vernon 1968).

On July 12, 1982, the date of the conveyance, an amendment to the security agreement was executed. The amendment added the following condition for default under the security agreement:

> If debtor shall default under any lease agreement in respect of the collateral entered into with GATX Leasing Corporation.

This letter of credit obtained by SWD on behalf of GLC from Frost, provides that the letter be accompanied at presentment by:

> A signed written statement to the effect that Southwestern Drilling Rig 4 Partnership has failed to comply with the terms and conditions of one certain security agreement/chattel mortgage dated May 15, 1982 between Southwestern

Drilling Rig 4 Partnership and GLC Finance Corporation.

On March 30, 1983, an officer of GLC presented the letter and the required documentation to Frost asserting a default under the security agreement/chattel mortgage and directed that the funds be tendered to GATX. On April 1st, DBM brought a declaratory judgment action seeking to determine whether GATX and GLC could properly present the letter. DBM obtained, in addition, a temporary restraining order against presentment and payment on the letters. Subsequently, after a hearing, the trial court granted the temporary injunction which is the subject of this appeal.

The appellants raise four points of error, attacking both the temporary injunction and the interpleader. But the resolution of the temporary injunction issue is dispositive of the entire case.

■ We must first determine the requisites for obtaining a temporary injunction. The requirements for a temporary injunction traditionally include a showing by the applicant of irreparable injury, the lack of an adequate remedy at law, and the likelihood of prevailing on the merits. *Millwrights Local Union No. 2484 v. Rust Engineering Co.*, 433 S.W.2d 683, 685–86 (Tex. 1968); *Raine v. Searles*, 302 S.W.2d 486, 487 (Tex.Civ.App.—El Paso 1957, no writ). Appellees argue, however, that § 5.114(b)(2) is a statutory authorization for injunctive relief and that they need not show the absence of an adequate remedy at law. But § 5.114 is merely a codification of the common law. *Siderius, Inc. v. Wallace Co., Inc.*, 583 S.W.2d 852, 859–60 (Tex.Civ.App.—Tyler 1979, no writ); H. HARFIELD, LETTERS OF CREDIT 76 (1979). Moreover, the statute is clearly permissive not mandatory: "A court of appropriate jurisdiction may enjoin such honor." Tex.Bus. & Com. Code Ann. § 5.114(b)(2) (Vernon 1968). We agree with the statement of the Supreme Court of Wisconsin in *Werner v. A.L. Grootemaat & Sons, Inc.*, 80 Wis.2d 513, 259 N.W.2d 310 (1977) that:

Even if the requirements of the statute had been met, granting an injunction is not mandatory. The statute says 'may,' not 'must.' These appellants still had the burden of showing that their demand for injunctive relief is within the court's guidelines for that form of relief. These include an 'inadequate remedy at law' and 'irreparable injury.'

*Id.* at 315.

We now turn to an analysis of § 5.114 and the law of letter of credit and the appellees' grounds for a temporary injunction.

A letter of credit has been defined by our State Supreme Court as:

> The engagement is a letter of credit if the issuer has a *primary* obligation that is dependent *solely* upon presentation of conforming documents and not upon the factual performance or nonperformance by the parties of the underlying transaction.

*Republic National Bank of Dallas v. Northwest National Bank of Fort Worth,* 578 S.W.2d 109, 115 (Tex.1978).

There are usually three parties to a letter of credit transaction: the customer (DBM), who obtains the credit for a beneficiary (GLC) from an issuer (Frost). Tex.Bus. & Com.Code Ann. §§ 5.103(a)(3), (4) and (7) (Vernon 1968). The customer may obtain an irrevocable letter of credit, which is a binding obligation to pay upon presentment of conforming documents, or revocable letter of credit, which is an illusory obligation which may be cancelled at any time by the customer. *West Virginia Housing Development Fund v. Sroka,* 415 F.Supp. 1107, 1111 (W.D.Pa.1976). The letter of credit in this case is an irrevocable letter of credit.

▆▆▆ The letter of credit contract itself is one of a set of three separate contracts: the underlying contract between the customer and beneficiary, the contract between the issuer and customer arranging the credit, and the executory letter of credit contract between the issuer and beneficiary. *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 464–65 (2nd Cir.1970); *Repub-*

*lic National Bank of Dallas v. Northwest National Bank of Fort Worth,* 578 S.W.2d 109, 112 (Tex.1979); *Siderius, Inc. v. Wallace Co., Inc.,* 583 S.W.2d 852, 858–59 (Tex. Civ.App.—Tyler 1979, no writ). The essential purpose of a letter of credit is to insure payment to the beneficiary. *New York Life Insurance Co. v. Hartford National Bank & Trust Co.,* 22 U.C.C.Rep.Serv. 761, 767 (Conn.1977); *Lustrelon, Inc. v. Prutscher,* 178 N.J.Super. 128, 428 A.2d 518, 523 (1981); *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 323 (1975). Accordingly, it is a cardinal principle of letter of credit law that the obligation of the issuer bank to pay to the beneficiary upon presentment of conforming documents, is independent of the underlying contractual relationship between the customer and the beneficiary. *Bank of Newport v. First National Bank & Trust Co. of Bismark,* 34 U.C.C.Rep.Serv. 650, 655–56 (8th Cir.1982); *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth,* 578 S.W.2d 109, 114 (Tex.1978); *Colorado National Bank of Denver v. Board of Commissioners of Routt County,* 634 P.2d 32, 38–39 (Colo.1981). The contractual disputes between the customer and beneficiary are not the concern of the issuer. The issuer deals in documents and not goods. When conforming documents are presented, payment must be made. Tex.Bus. & Com. Code Ann. § 5.114(a) (Vernon 1968).

The Uniform Commercial Code does codify, however, an exception recognized in the pre-code law which allows the issuer to dishonor or a court of proper jurisdiction to enjoin the honoring of an otherwise conforming letter of credit. Section 5.114(b)(2) provides:

> Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but required document does not in fact conform ... or is forged or fraudulent or where there is fraud in the transaction.
>
>     *    *    *    *    *    *
>
> (2) In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for

payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

Tex.Bus. & Com.Code Ann. § 5.114(b)(2) (Vernon 1968).

The appellees have based their action for a temporary injunction on this section. The appellees allege that the documents presented by appellant, the notice of default under the security agreement, were fraudulent because the underlying debt had been extinguished with the transfer of title of the rig to GATX. Without an underlying debt, so the argument goes, there can be no security agreement. This contention represents a misunderstanding of article 9 security interests, Tex.Bus.Com.Code Ann. Ch. 9 (Vernon 1968) and the egregious kind of fraud that must be established to obtain a valid injunction under 5.114(b)(2).

▆▆ The allegation that the passage of title of the collateral to the creditor extinguishes the security interest presents at best a dispute concerning the validity of the underlying obligation and not one of fraud contaminating the letter of credit contract. A "lease" can be an enforceable article 9 security interest. Tex.Bus. & Com.Code Ann. § 1.201(37) (Vernon 1968). Much depends on whether there is an option to purchase in the lease in favor of the lessee and on the terms of that option. *Woods-Tucker Leasing Corp. v. Hutcheson-Ingram,* 626 F.2d 401, 412 (5th Cir.1980); *Federal Sign & Signal Corp. v. Berry,* 601 S.W.2d 137, 139–40 (Tex.Civ.App.—Austin 1980, no writ); *Tackett v. Mid-Continent Refrigerator Co.,* 579 S.W.2d 545, 547–48 (Tex.Civ. App.—Fort Worth 1979, writ ref'd n.r.e.); *Davis Brothers v. Misco Leasing, Inc.,* 508 S.W.2d 908, 912–13 (Tex.Civ.App.—Amarillo 1974, no writ). The appellees have therefore presented what is at best an argument over whether the underlying obligation is a true lease or a security agreement.

Section 5–114(2)(b) codifies pre-code law. *Bank of Newport v. First National Bank & Trust Co. of Bismark,* 34 U.C.C.Rep.Serv. 650, 657 (8th Cir.1982); *Siderius, Inc. v. Wallace Co., Inc.,* 583 S.W.2d 852, 860 (Tex. Civ.App.—Tyler 1979, no writ). The failure of appellees to establish the necessary quantum or degree of fraud is made all the more apparent by the examination of case law from other jurisdictions that have addressed this issue. The leading case on the injunction of letters of credit due to fraud is that of *Sztejn v. J. Henry Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (1941). In *Sztejn,* the beneficiary had contracted to supply the customer bristles but intended to deliver garbage. The customer gave advance notice to the bank of the beneficiary's intended fraudulent conduct. Although the beneficiary tendered conforming documents, the court in *Sztejn* stated:

> This is not a controversy between the buyer and seller concerning a mere breach of warranty regarding the quality of merchandise; on the present motion, it must be assumed that the seller has intentionally failed to ship any goods ordered by the buyer. In such a situation, where the seller's fraud has been called to the bank's attention before the drafts and documents have been presented for payment, the principle of the independence of the bank's obligations under the letters of credit, should not be extended to protect the unscrupulous seller.

*Id.* at 634.

The Pennsylvania Supreme Court has defined the nature of fraud codified under the terms of § 5–144(2)(b) as:

> The situation of fraud in which the wrong doing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served.

*Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 324–25 (1975). Some courts have referred to the standard of fraud as that of fraud in the inducement. *NMC Enterprises, Inc. v. Columbia Broadcasting System, Inc.,* 14 U.C.C. Rep.Serv. 1427, 1430 (N.Y.Sup.Ct. Special Term 1974) and others as fraud in factum. *Bossier Bank & Trust v. Union Planners*

*National Bank,* 550 F.2d 1077, 1082 (6th Cir.1977).

▪ We think the standard set by the Pennsylvania court in *Intraworld, supra,* correctly effectuates the purposes of § 5–114(2)(b) as taken from *Sztejn.* The court in *Sztejn* juxtaposed a mere breach of warranty, under which there is a dispute over the quality of performance, against the unscrupulous and intentional failure of a seller to perform in any manner whatsoever its obligations under the underlying contract. The customer in *Sztejn* was, therefore, denied any value from his participation in the underlying contract. The letter of credit was, in fact, being used by the customer as a vehicle for fraud. *Sztejn v. J. Henry Schroder Bank & Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631, 634–35 (1941). Other courts have echoed the emphasis of the *Sztejn* court on the unscrupulous nature of the beneficiary's conduct as a predicate for an injunction. *West Virginia Housing Development Fund v. Sroka,* 415 F.Supp. 1107, 1114 (W.Dist.Pa.1976); *NMC Enterprises, Inc. v. Columbia Broadcasting, Inc.,* 14 U.C. C.Rep.Serv. 1427, 1428–29 (N.Y.Special Term 1974). It cannot be said that the appellants have committed anything approaching the intentional or unscrupulous conduct which would deprive the appellees of any benefit of the underlying contract and which would transform the letter of credit in the instant case into a means for perpetrating fraud.

▪ Similarly, the other arguments advanced by appellees in favor of the injunction are without merit. The appellee has challenged the authority of the partner, SWD, to bind the other members of the partnership. This contention is even further removed than those concerning the underlying obligation and relates to the scope of a totally separate agreement, the SWD partnership agreement. Moreover, the expiration of the financing statement has no effect whatsoever on the parties to the security agreement, and merely effects the rights of the creditor against any potential subsequent creditors whose obligations may be supported by the collateral. Tex.Bus. &

Com.Code Ann. §§ 9.203; 9.301(a)(1); 9.302, 9.303, 9.312 (Vernon 1968); White & Summers Uniform Commercial Code; Handbook on the Uniform Commercial Code, § 23–5. The appellee also argues that the amendment to the security agreement was an ineffective amendment of the letter of credit. But we see no reason why the parties cannot agree, as here, to amend the security agreement even if it has an ancillary effect upon the letter of credit so long as it does not frustrate the legitimate purposes for obtaining the credit. Finally, the argument that the parties have made an improper assignment or transfer of the letter of credit under § 5.116(a) is not persuasive. The parties have, in fact, transferred the right to proceed from GLC to GATX under § 5.116(b). The exhibits reveal that the issuer was authorized by GLC to pay the proceeds of the letter of credit to GATX.

▪ Appellees therefore, failed to establish probable success in their action on the letter of credit. The standard for enjoining a letter of credit for fraud is nothing less than fraud that destroys the legitimate purposes of the letter of credit's independence from the underlying obligation. Appellees' contentions fell woefully short of this standard. Moreover, appellees are left with their remedy at law: a suit for money damages against the appellants for wrongful presentment of the letter of creditor on the underlying contract. Tex.Bus. & Com. Code Ann. §§ 5.111(a); 5.114 Comment 2 (Vernon 1968).

▪ The interpleader falls with the temporary injunction. The standard for fraud which allows a trial court to enjoin the presentment and honor of a letter of credit is the same sort of fraud which permits an issuer bank the option to in good faith dishonor a letter of credit. *Siderius, Inc. v. Wallace Co., Inc.,* 583 S.W.2d 852, 862 (Tex.Civ.App.—Tyler 1979, no writ); § 5–114(2)(b), Tex.Bus. & Com.Code Ann. (Vernon 1968). Our holding that the trial court incorrectly issued the temporary injunction in that the appellee failed to meet its burden to establish the requisite fraud, relieves

the issuer bank of any competing liability. We have a case, therefore, in which a conforming set of documents have been presented to the issuer and which requires payment on the letter of credit. Tex.Bus. & Com.Code Ann. § 5–114(a) (Vernon 1968). It is ordered that judgment be reversed and the temporary·injunction be dissolved.