**FEDERAL SIGN AND SIGNAL CORPORATION, Appellant,**

v.

**W. Elton BERRY et al., Appellees.**

**No. 13131.**

Court of Civil Appeals of Texas, Austin.

May 28, 1980.

M. Troy Murrell, Ray, Anderson, Shields, Trotti & Hemphill, Dallas, for appellant.

Walter H. Mizell, Michael J. Crowley, Brown, Maroney, Rose, Baker & Barber, Austin, for Carl W. Burnette, trustee.

SHANNON, Justice.

Appellees, Carl Burnette, Trustee, W. Elton Berry, and Tinsley's, Inc., filed suit in the district court of Travis County against appellant Federal Sign and Signal Corporation seeking a declaratory judgment and an injunction. The parties' dispute concerned title to four large signs situated on two lots in Austin owned by Burnette, Trustee. After a bench trial, the district court entered judgment declaring that appellees held title to the signs and enjoining appellant from removing or damaging the signs. This Court will affirm the judgment.

At all times material, Burnette, Trustee, owned a lot on Anderson Lane and a lot on Manchaca Road. In November, 1975, Burnette leased those premises to Larry G. Hood, who opened two "fast-food" restaurants. The lease agreement provided in part that "all alterations and improvements made by the lessee shall become the lessor's property." The lease agreement provided further that should the lessee fail to pay the rentals, the lessor was empowered to cancel the lease and regain possession of the premises.

In January, 1976, Hood through L.G.H. Enterprises, Inc., entered into lease agreements whereby appellant was to erect and affix two large signs to each lot. After installation of the signs, Hood defaulted in the rental payments to Burnette. Burnette sued to foreclose his landlord's lien, and judgment was entered in January, 1977, foreclosing the lien and declaring that Burnette recover title to all property left in and on such premises.

In May, 1977, Burnette leased the Manchaca lot, together with all improvements thereon, to appellee Berry. On the same date Burnette sold to Berry all "personal property" and fixtures attached to the Manchaca lot.

In June, 1978, Burnette leased the Anderson Lane lot, together with all improvements situated thereon, to Tinsley's, Inc. At the same time Burnette sold to Tinsley's, Inc., various items of personal property and fixtures.

Appellant entered into the lease agreements with L.G.H. Enterprises, Inc., on January 25, 1976, pursuant to which appellant fabricated and erected the signs for the two lots owned by Burnette. L.G.H Enterprises, Inc., was a corporation apparently employed by Larry G. Hood in operating the businesses at the two lots. The lease agreements were endorsed by Larry G. Hood as individual guarantor.

The lease agreements for the signs provided for total lease payments in the sum of

$19,061 over the five-year term of the leases. On the same day the leases were executed, L.G.H. Enterprises, Inc., and appellant signed agreements giving L.G.H. Enterprises, Inc., the option to purchase the four signs at the end of the lease term for $2,665.15.

Soon after L.G.H. Enterprises, Inc., and appellant executed the leases and purchase options, L.G.H. Enterprises, Inc., defaulted in its lease payments. Nearly twenty-one months later, appellant's employees appeared at the premises at Anderson Lane and Manchaca Road, occupied by Tinsley's, Inc., and Berry, respectively, announcing their claim of title to the signs and asserting their intention to remove the signs. Until that time Burnette did not know that appellant claimed title to the signs.

Appellees' position at trial was that the transaction between appellant and L.G.H. Enterprises, Inc., or Larry G. Hood was in truth a sale; that the leases were "leases intended as security devices" as contemplated by the Texas Business and Commercial Code; and that appellant did not act to protect its purported security interest in the property by filing a financing statement. Accordingly, appellees claimed, Burnette's judicial foreclosure of January, 1977, cut off appellant's unperfected security interest.

Appellant filed a counterclaim seeking a declaration from the court that it owned the four signs and seeking past rentals from Berry and Tinsley's, Inc.

The district court entered judgment declaring the signs to be the property of appellees, enjoining appellant from interfering with the signs, and denying all relief sought by appellant in its counterclaim.

Upon request, the district court filed findings of fact and conclusions of law. Although not expressly stated, the district court necessarily must have concluded that the transaction between appellant and L.G.H. Enterprises, Inc., or Larry G. Hood was intended as a sale. The court found as a "fact" that the lease agreements plus options to purchase constituted merely "leases intended as security devices" as contemplated by Tex.Bus. & Comm.Code Ann.

§ 1.201(37) (1968). The sign company did not file a financing statement pursuant to Tex.Bus. & Comm.Code Ann. § 9.302 (Supp. 1980). Accordingly, the district court concluded that appellant's failure to file to perfect its security interest resulted in an unperfected security interest under § 9.302 of the Code. Burnette became a "lien creditor" as contemplated by § 9.301(c) of the Code upon entry of the judgment of foreclosure on January 21, 1977. The court concluded further that appellant's unperfected security interest was subordinate to the rights of Burnette, as lien creditor, pursuant to § 9.301(a)(2) of the Code. Finally, the court concluded that the judicial foreclosure obtained by Burnette divested appellant of any interest in the signs placed on the property.

Appellant's pivotal point on appeal is that the district court erred in its implied determination that the transaction between it and L.G.H. Enterprises, Inc., or Larry G. Hood was a sale and its explicit determination that the leases-with-options-to-purchase merely constituted security devices as contemplated by Tex.Bus. & Comm.Code Ann. § 1.201(37) (Supp.1980).

The foundation for the judgment of the district court is Tex.Bus. & Comm. Code Ann. § 1.201(37). The applicable portions of that section are:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (A) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (B) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Section 1.201(37) provides that whether a lease was intended by the parties as a security depends upon the facts of each case.

Nonetheless, should the lease provide that upon compliance with its terms the lessee becomes owner of the property for no additional consideration, then § 1.201(37) deems, as a matter of law, the lease to be one intended for security. *Tackett v. Mid-Continent Refrigerator Co.*, 579 S.W.2d 545 (Tex.Civ.App.1979, writ ref'd n. r. e.). On the other hand, the mere inclusion of an option-to-purchase in a lease transaction does not, as a matter of law, result in the lease being one intended for security. § 1.201(37). Should the lease provide that upon compliance with its terms the lessee becomes owner of the property by the payment of a "nominal" consideration, the determination whether the lease was one intended for security is usually a question of fact. In such cases, the question becomes an inquiry into the meaning of the term "nominal." *Davis Brothers v. Misco Leasing, Inc.*, 508 S.W.2d 908 (Tex.Civ.App.1974, no writ).

*Davis Brothers* and *Tackett* refer to two "tests" employed by courts to determine whether consideration paid to exercise the option is "nominal." Those "tests" require one to:

(1) compare the consideration with the market value of the equipment at the time the option is to be exercised; or

(2) ascertain whether the terms of the option are such so as to leave the lessee with no sensible alternative but to exercise the option.

[3] The leases between appellant and L.G.H. Enterprises, Inc., or Larry G. Hood were for sixty-month terms, aggregating a total monthly payment of $296.85. The total sum to be paid over the life of the leases was $19,061.00. The lessee was permitted to exercise the option-to-purchase the signs upon payment of $2,665.15, a sum approximately 14% of the total rental payments. The option paid was about 26% of the total cost of manufacturing the signs. The total sum for rentals over the life of the lease, $19,601, exceeds the actual cost of the signs by about $9,500.

With respect to the first "test," appellant insists that the market value of the signs at the time options could be exercised was $3,900. To exercise the options, the lessee was required to pay $2,665.15. Because $2,665.15 is 68.33% of $3,900.00, appellant claims that the consideration was hardly "nominal." One problem with appellant's thesis is that, in appellees' words, appellant was, at trial, ". . . absolutely, totally, amazingly inconsistent in its approach to the value of the signs." Appellant's dilemma as to proof of value stemmed from the fact that for purposes of its counterclaim appellant sought to value the signs on the high side, while for purposes of the purchase-option comparison, appellant endeavored to value the signs as low as possible. It is obvious that the district court, as was its right, chose to believe appellant's evidence showing the signs having the higher value. *Harrell v. Sunylan Co.*, 128 Tex. 460, 97 S.W.2d 686 (1936). The higher the market value of the signs, the more "nominal" the consideration. Upon this basis, alone, the judgment of the district court may be affirmed.

The second "test" is that the consideration is "nominal" where no reasonable businessman would fail to exercise the option because there would be no sensible alternative but to do so. The district court could have determined, justifiably, that no reasonable businessman, after paying sixty monthly payments of $296.85, would fail to exercise a purchase option that approximated only nine more monthly payments.

All of appellant's points of error are overruled, and the judgment is affirmed.

Affirmed.