Opinion by Justice Moseley
In Hunt County, Texas, George Briscoe was charged with (a) theft of property worth more than $1,500, but less than $20,000, (b) giving a false or misleading statement to obtain credit in an amount of more than $1,500, but less than $20,000, and (c) theft of property worth more than $20,000, but less than $100,000. After a *869 jury trial, Briscoe was found guilty of all three charges. On the first charge of theft, he was sentenced to 180 days in state jail. For giving a false statement to obtain property or credit, he was assessed the obligation to pay $13,000 in restitution and sentenced to two years in state jail. On the final charge of theft, he was sentenced to ten years in prison, probated for ten years, assessed a $10,000 fine, and ordered to pay $28,862 in restitution. The three sentences were to run concurrently.
Here, Briscoe appeals from the charge of having made a false or misleading statement to obtain credit of more than $1,500, but less than $20,000.[1] In a single point of error, Briscoe contends that the evidence supporting his conviction is legally[2] insufficient.[3] Because we find that the evidence supporting the verdict is not legally sufficient to sustain the conviction, we sustain Briscoe's point of error, reverse the trial court's judgment, and render a judgment of acquittal.
The facts of this case are discussed in detail in our opinion in Briscoe's companion case, cause number 06-17-00059-CR, in which he appeals his conviction for theft of property valued at more than $1,500, but less than $20,000. Therefore, in this opinion, we discuss only the facts relevant to the determination of whether the trial court erred in granting the State's motion to strike three vehicle identification numbers from the indictment, hereby raising the issue of the sufficiency of the evidence.
I. Is there Sufficient Evidence that Briscoe Intended to Obtain a Loan of Money Through the Bobcat Transaction?
On June 24, 2011, through a written and signed bill of sale, Briscoe sold a one-half interest in a Bobcat tractor,[4] which he did not own, to Jayson Campbell for $10,000. In his sole point of error, Briscoe contends that the evidence supporting his conviction for making a false statement to obtain credit is legally insufficient because the transaction at issue did not constitute a loan of money.
In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks , 323 S.W.3d at 912 (citing *870 Jackson , 443 U.S. at 319, 99 S.Ct. 2781 ); Hartsfield v. State , 305 S.W.3d 859, 863 (Tex. App.-Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. Brooks , 323 S.W.3d at 917-18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson , 443 U.S. at 318-19, 99 S.Ct. 2781 ); Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State , 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id.
A person commits the offense of making a false statement to obtain property or credit by "intentionally or knowingly mak[ing] a materially false or misleading written statement to obtain property or credit." TEX. PENAL CODE ANN. § 32.32(b) (West 2016). Credit includes "a loan of money ... furnishing property or service on credit, [and] ... comaking, endorsing, or guaranteeing a note or other instrument for obtaining credit." TEX. PENAL CODE ANN. § 32.32(a)(1), (2), (4) (West 2016). Here, the indictment alleged that Briscoe:
did then and there intentionally and knowingly make a materially false or misleading written statement to JAYSON CAMPBELL, namely, represent ownership in a Bobcat tractor in a bill of sale, with the intent to obtain credit, namely $10,000 personal loan, and the amount of the credit was $1,500 or more but less than $20,000.
Briscoe does not challenge the jury's implicit finding that he made a materially false or misleading statement in the bill of sale; rather, he contends that there is insufficient evidence to support the jury's implicit finding that the Bobcat transaction amounted to a loan of money under Article 32.32.[5]
On direct examination, Campbell was asked about the Bobcat transaction:
Q .... What happened in June 2011, as far as the Bobcat?
*871 A George said he needed some money to close a deal, and he was needing $13,000. And I said, well, I can round it up, but I'm going to have to have something to hold, or whatever, to give you this money. So he had a skid-steer. I got it and held it. And I got a bill of sale saying I had interest in it for 90 days. He had 90 days that he had to pay me back, or I got the Bobcat.
....
Q .... What is a skid loader?
A It's a Bobcat, a small piece of equipment.
....
Q .... How did you view the $10,000 you were giving to George in exchange for his Bobcat for this 90 days?
A That I was buying the Bobcat unless he paid me back.
After giving Briscoe $3,000 in cash and a check for $10,000,[6] Campbell "picked up the Bobcat" and received a document entitled "Bill of Sale." Campbell's $10,000 check mentioned "Bobcat" in the memo line. The bill of sale was dated June 24, 2011, signed by George Briscoe, and purported to sell a one-half interest in a Bobcat for $10,000. The bill of sale included a buy-back provision stating that the "[b]uyer and seller agree that the seller has the option to buyback [sic] the equipment within 90 days and [sic] a rate of 5% per month." Direct examination of Campbell continued:
Q ... You mentioned there was a 90-day buy-back period. So how did you view the $10,000 you were giving to George?
....
Q ... How did you view the $10,000 you were giving George in exchange for his Bobcat for this 90 days?
A That I was buying the Bobcat unless he paid me back.
Q So if he was going to pay you back, was there any collateral to make sure you got paid back on this transaction?
A Not on that one.
On cross-examination, Campbell, the owner of a heating and air business, testified that he was not a lawyer and had no financial background, but that he understood what the word "loan" meant. He was asked specifically about the Bobcat transaction:
Q Okay. And when you look at that bill of sale, it talks about it's a price, one-half interest of $10,000, right?
A Yes.
....
Q It doesn't say this is a loan, does it?
A No.
Q Doesn't-what it does say is that you and Mr. Briscoe agree that he has the option at that point to buy back the equipment within 90 days at the rate of 5 percent per month. That's what it says?
A Yes.
Q It doesn't say in 90 days he's going to get it back or he's going to pay you 5 percent interest. It doesn't say anything like that, does it?
*872 A No.
Q It wasn't about a loan right then. You would get interest in that dadgum Bobcat, right?
A Yes.
Q It wasn't to get credit from you or anything, was it?
A No.
....
Q And that-again, that's not a loan or that's not credit or anything else, is it?
A No.
Q And that whole transaction involving that Bobcat was never about credit, was it?
A No.
....
Q And we see a $10,000 check from [Campbell]?
A Yes.
Q For the 50 percent interest in the Bobcat?
A Yes.
When asked on redirect about what the ninety-day buy-back option meant to Campbell, he believed that it meant "[t]hat George wanted a chance to get it back. He needed $13,000 for something.... I didn't think he would ever come up with the money to buy it back." "If you hold onto something temporarily and somebody gets it back in a certain period," Campbell would call it a "loan."
On recross:
Q And Mr. Grogan asked you some questions about, you know, this 90 days. That's an option that Mr. Briscoe or somebody had for 90 days to get the property back, right?
A Correct.
Q They don't have to do it, do they?
A They don't have to.
Q So there's not anything that's in there that says you got to make monthly payments or anything like that, right?
A Correct.
Q So you really weren't thinking about it as it's a loan or credit, were you?
A No.
Q You thought, I bought this Bobcat?
A I thought I'd eventually end up with it, yes.
Campbell's business partner in the Bobcat transaction, Charles Powell, spoke with Briscoe, and "[t]he discussion was that he wanted to sell the Bobcat with the stipulation that if he could return the money to us within 90 days, that we would let him have it back and that during the time that we had it, that we could use it at our will." After speaking with Briscoe, Powell wrote Campbell a check to help finance the Bobcat transaction, and once Campbell paid Briscoe and they took possession of the Bobcat, Powell believed that he and Campbell each owned fifty percent of it. However, on cross-examination, he admitted that he had not read the bill of sale, but that his understanding of the transaction was that if Briscoe failed to "pay [the] money back" within ninety days, he and Campbell would own the Bobcat.
Several weeks later, Briscoe called Powell and asked to use the Bobcat so he could perform some work on his ranch. Powell brought him the tractor, but, at Powell's *873 insistence, Briscoe wrote him a check for $10,000 because without possession of the Bobcat, he and Campbell "would no longer have any collateral for the $10,000" price they paid for the Bobcat.
Testifying in his own defense, Briscoe admitted that he sold Campbell "a portion of the Bobcat," but he claimed that the Bobcat's owner, Clint Aycox, told him in a text message that he "wanted it done that way" because Aycox wanted the money for his business operations and Campbell "wanted to use the Bobcat to start a new landscape business, and he couldn't afford the whole Bobcat." Briscoe testified that the transaction included the buy-back option "[i]n the event [Aycox] wanted ... it back," but that there was never any discussion that the transaction was a loan.
The issue in this case is whether there is sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that the Bobcat transaction was a loan of money. Because the term "loan" is not defined in the statute, we give the term its "plain meaning." Daniels v. State , 754 S.W.2d 214, 219 (Tex. Crim. App. 1988). Black's Law Dictionary defines "loan" as "1. [a]n act of lending; a grant of something for temporary use ... 2. [a] thing lent for the borrower's temporary use; esp. a sum of money lent at interest." Loan , BLACK'S LAW DICTIONARY (10th ed. 2014); see also Ex parte Perry , 483 S.W.3d 884, 902-03 (Tex. Crim. App. 2016) (in determining a word's plain meaning, courts can consult dictionary definitions). Black's defines "lend" as "1. [t]o allow the temporary use of (something), sometimes in exchange for compensation, on condition that the thing or its equivalent be returned. 2. [t]o provide (money) temporarily on condition of repayment, usu. with interest." Lend , BLACK'S LAW DICTIONARY (10th ed. 2014). At a minimum, the plain meaning of loan is the temporary use of another's property or money with an express or implied obligation to return or repay that which was borrowed, and it is that obligation to return or repay that distinguishes a loan from a gift or sale.
In the Bobcat transaction, Briscoe purported to sell a one-half interest in the Bobcat to Campbell for $10,000, but the evidence is undisputed that Briscoe was under no obligation to repay the money. Although Campbell initially used the word "loan" to characterize the agreement into which he entered with Briscoe, subsequent testimony by all of Campbell, Powell, and Briscoe (along with the bill of sale instrument) fleshed out the nature of the agreement into which they entered. The bill of sale explicitly granted Briscoe the option to regain the Bobcat upon the payment of a certain sum of money. It is clear that the chance to regain the Bobcat rested solely upon the choice of Briscoe because he had no obligation to do so. The use of the word "loan" could easily be characterized as an erroneous attempt by a layman to apply a term to describe the transaction into which they had entered. While Campbell characterized the Bobcat as "something to hold" in exchange for his money, Campbell gave unequivocal testimony that the buy-back provision of the transaction gave Briscoe "a chance" to repay the money and "get [the Bobcat] back," but that he did not "have to do it." Powell testified that Briscoe "wanted to sell the Bobcat" with the provision that he could buy it back within ninety days, but (like Campbell), Powell's testimony did not imply that Briscoe was obligated to do so. Even Briscoe testified that the buyback option was a part of the transaction just in case Aycox wanted the Bobcat back.
Even viewing the evidence in the light most favorable to the verdict, we find the *874 evidence that the intended transaction constituted a loan (i.e., the grant of credit) is legally insufficient because a reasonable jury could not find beyond a reasonable doubt that the intended transaction included an express or implied obligation to return the money. Accordingly, we sustain this point or error.
We reverse the trial court's judgment and render a judgment of acquittal.
Dissenting Opinion by Chief Justice Morriss
In June 2011, to obtain funds needed for operation of a Hunt County hunting facility his company had leased, George Briscoe executed a bill of sale purporting to transfer a one-half interest in a Bobcat tractor,[7] which he did not own, to Jayson Campbell in exchange for Campbell's providing Briscoe $13,000.00. Based on that transaction, Briscoe was indicted for, and ultimately convicted of, giving a false or misleading statement to obtain credit in an amount more than $1,500.00 but less than $20,000.00. See TEX. PENAL CODE ANN. § 32.32 (West 2016). This appeal of that judgment involves only one question unique to this appeal: whether legally sufficient evidence supports the conviction and the implicit, necessary finding that the transaction was a collateralized loan rather than a sale of a one-half interest in the Bobcat tractor. The well reasoned majority opinion of this Court reverses Briscoe's conviction in this particular case and renders an acquittal, finding legally insufficient evidence of a loan. Because I would find legally sufficient evidence to support the conviction, I respectfully dissent.
In evaluating legal sufficiency of the evidence, we are to review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks v. State , 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ); Hartsfield v. State , 305 S.W.3d 859, 863 (Tex. App.-Texarkana 2010, pet. ref'd). We are to examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson , 443 U.S. at 318-19, 99 S.Ct. 2781 ); Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
The issue before us is whether there is sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that the Bobcat transaction was a loan of money. Because the term "loan" is not defined in the statute, we give the term its "plain meaning." Daniels v. State , 754 S.W.2d 214, 219 (Tex. Crim. App. 1988). Black's Law Dictionary defines "loan" as "1. [a]n act of lending; a grant of something for temporary use ... 2. [a] thing lent for the borrower's temporary use; esp. a sum of money lent at interest." Loan , BLACK'S LAW DICTIONARY (10th ed. 2014); see also Ex parte Perry , 483 S.W.3d 884, 902-03 (Tex. Crim. App. 2016) (in determining word's plain meaning, courts can consult dictionary definitions). Black's defines "lend" as "1. [t]o allow the temporary use of (something), sometimes in exchange for compensation, on condition that the thing or its equivalent be returned. 2.
*875 [t]o provide (money) temporarily on condition of repayment, usu. with interest." Lend , BLACK'S LAW DICTIONARY (10th ed. 2014). At a minimum, a loan includes an express or implied obligation, or a practical economic necessity,[8] to return or repay that which was borrowed, and it is that obligation to return or repay that distinguishes a loan from a gift or sale.
I differ from the majority in that I see evidence in this record, although the evidence is admittedly conflicting, that suggests that the parties may very well have contemplated a loan. In this record are elements involved in a loan, including paying the sum of money back and providing collateral or "something to hold" for the money.
On direct examination, Campbell was asked about the Bobcat transaction:
Q .... What happened in June 2011, as far as the Bobcat?
A George said he needed some money to close a deal, and he was needing $13,000. And I said, well, I can round it up, but I'm going to have to have something to hold, or whatever, to give you this money. So he had a skid-steer. I got it and held it. And I got a bill of sale saying I had interest in it for 90 days. He had 90 days that he had to pay me back, or I got the Bobcat.
....
Q .... What is a skid loader?
A It's a Bobcat, a small piece of equipment.
....
Q .... How did you view the $10,000 you were giving to George in exchange for his Bobcat for this 90 days?
A That I was buying the Bobcat unless he paid me back.
Direct examination of Campbell continued:
Q ... You mentioned there was a 90-day buy-back period. So how did you view the $10,000 you were giving to George?
....
Q ... How did you view the $10,000 you were giving George in exchange for his Bobcat for this 90 days?
A That I was buying the Bobcat unless he paid me back.
Powell testified to his understanding of the transaction that, if Briscoe failed to "pay [the] money back" within ninety days, he and Campbell would own the Bobcat.
Several weeks later, Briscoe called Powell and asked to use to the Bobcat so he could perform some work on his ranch. Powell brought him the tractor, but, at Powell's insistence, Briscoe wrote him a check for $10,000.00 because, without possession of the Bobcat, he and Campbell "would no longer have any collateral for the $10,000."
Here, Campbell testified that he gave Briscoe the money so he could "close a deal," but when Campbell insisted on having "something to hold," Briscoe executed the bill of sale and transferred possession of the Bobcat for Campbell to hold. Campbell and Powell testified that, in order for Briscoe to get the Bobcat back, he had to pay back the money or "return the money"
*876 within ninety days. From this, the jury could have reasonably inferred that the parties contemplated a temporary loan transaction, where $13,000.00, in two parts, $10,000.00 and $3,000.00, was given to Briscoe on condition that he return the funds or lose the collateral. As the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, the jury was free to accept this portion of the testimony and look through the provisions of the bill of sale and the other witness testimony indicating that the transaction was a sale rather than a loan. See Duren v. State , 87 S.W.3d 719, 724 (Tex. App.-Texarkana 2002, pet. denied). Therefore, I would find that there was legally sufficient evidence to support the jury's implicit finding that the Bobcat transaction amounted to a loan of money.
Accordingly, I respectfully dissent.

In companion cases 06-17-00059-CR and 06-17-00061-CR Briscoe appeals from convictions for theft of property valued at more than $1,500, but less than $20,000, and theft of property valued at more than $20,000, but less than $100,000.

Briscoe also argues that the evidence is factually insufficient to sustain the verdict. However, the Texas Court of Criminal Appeals has made clear that in criminal cases, the Jackson v. Virginia test for legal sufficiency of the evidence is the only standard that we should apply in determining whether there is sufficient evidence to support the elements of a criminal offense that requires proof beyond a reasonable doubt. Brooks v. State , 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.) (citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ).

In a consolidated brief, Briscoe argues that the State violated Article 39.14 of the Texas Code of Criminal Procedure by failing to disclose State's Exhibits 20 and 32 prior to trial. To the extent this point of error pertains to this appeal, we addressed the issue in detail in our opinion of this date on Briscoe's appeal in cause number 06-17-00059-CR. For the reasons stated therein, we likewise conclude that error has not been shown in this case.

The Bobcat is also referred to in the record as a skid loader and skid-steer.

The State argues, "The issue is not whether the transaction between [Briscoe] and Jayson Campbell constituted a buyback loan, but rather did [Briscoe] make a materially false or misleading written statement to obtain credit from Jayson Campbell." In support of its argument, the State cites Jones v. State , in which the Court of Criminal Appeals held that under Article 32.32, the gravamen of the offense is the false or misleading statement, not the loan application. Jones v. State , 323 S.W.3d 885, 893 (Tex. Crim. App. 2010). In Jones , the defendant had made three false statements in each of two separate loan applications, and the issue was whether under Article 32.32 the State could prosecute him for each of the six false statements he made or merely the two loan applications in which the statements were made. Id. at 886-87. Here, the issue is evidentiary sufficiency, rather than the allowable unit of prosecution, and therefore, the holding in Jones is inapplicable to the facts of this case. As alleged in the indictment, the State was required to prove beyond a reasonable doubt that Briscoe made a materially false or misleading statement in the bill of sale in order to obtain a personal loan of $10,000.

Campbell testified that Charles Powell, acting as his partner in the Bobcat transaction, helped him pay for the tractor.

The Bobcat is also referred to in the record as a skid loader and skid-steer.

See, e.g. , Fed. Sign & Signal Corp. v. Berry , 601 S.W.2d 137, 140 (Tex. Civ. App.-Austin 1980, no pet.) (lease of personal property considered one for security, i.e., effectively recognizing transaction as loan, when terms of option to purchase leave lessee with no sensible alternative but to exercise option).